**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**DWAIN ANDREW HUTSELL**                                                    **PLAINTIFF**

**V.**                          **CASE NO.: 4:14CV00048 BD**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                          **DEFENDANT**

<u>**ORDER AFFIRMING COMMISSIONER**</u>

Plaintiff Dwain Andrew Hutsell sought judicial review of the denial of his

application for disability insurance benefits.  Mr. Hutsell alleged he was disabled due to a

cervical spine injury, arthritis, and headaches.  SSA Record at 265.  The Administrative

Law Judge ("ALJ") held a hearing and denied Mr. Hutsell's application on February 25,

2011.  Mr. Hutsell requested review of the decision from the Appeals Council, which

granted his request, vacated the ALJ's decision, and remanded the case.  *Id*. at 105-108,

309-11.

On remand, the ALJ held a second hearing and, again, issued an opinion denying

benefits.  *Id*. at 8-26.  Mr. Hutsell requested review from the Appeals Council, which

denied review.  *Id*. at 1-5.

Mr. Hutsell graduated from high school and had an associate's degree in business

and data processing.  *Id*. at 42.  He had past relevant work as a computer programmer.  *Id*.

at 60.  He was within a few months of sixty years old at the time of his second

administrative hearing.  *Id*.  He lived with his wife and son.  *Id*. at 50.

**The Commissioner's Decision**

After considering all of the evidence, the Commissioner's ALJ determined that Mr. Hutsell had severe impairments– degenerative disc and joint disease of the cervical spine and arthritis. *Id*. at 13.  The ALJ also found, however, that Mr. Hutsell had the residual functional capacity ("RFC") to perform a full range of medium work. *Id*. at 17. Because the vocational expert testified that a person with Mr. Hutsell's RFC could perform his past relevant work, the ALJ concluded that Mr. Hutsell was not disabled under the Social Security Act and denied his application. *Id*. at 25-26.

After the Commissioner's Appeals Council denied Mr. Hutsell's second request for review, the ALJ's decision became a final decision for judicial review. *Id*. at 1-5.  Mr. Hutsell filed this case to challenge the ALJ's decision.  (Docket entry #2)  In reviewing the decision, the court must determine whether substantial evidence supported the decision and whether the ALJ made a legal error.[1]

---

[1]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (stating that the court's "review of the Commissioner's denial of benefits is limited to whether the decision is 'supported by substantial evidence in the record as a whole'"); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

**Appeals Council's Remand**

Mr. Hutsell first complains the ALJ erred by failing to comply with the Appeals Council's directions on remand.  In its opinion remanding the case, the Appeals Council advised the ALJ to further consider the treating source opinion and explain the weight given to the opinion evidence.  The Council noted that, "as appropriate," the ALJ may request additional evidence or further clarification from the treating source.  The Council also stated that the ALJ, "[i]f warranted," may obtain evidence from a medical expert to clarify the nature and severity of Mr. Hutsell's back impairment.

Mr. Hutsell claims that it was an "abuse of discretion" for the ALJ not to have followed the instructions of the Appeals Council on remand, but he points to no law supporting this assertion.  (#11 at pp. 7-8)  Mr. Hutsell raised the same complaint in the brief he submitted to the Appeals' Council to support his second request for review, but the Council declined review.  Even assuming that the ALJ failed to follow the Council's remand instructions, the Appeals Council declined review of the ALJ's decision, making the ALJ's decision the Commissioner's final decision.  20 C.F.R. § 404.981. Accordingly, the question here is not whether the ALJ followed the directions of the Appeals Council on remand, but rather, whether of the Commissioner's decision denying benefits is supported by substantial evidence in the record as a whole.  *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

**Opinion Evidence**

Mr. Hutsell complains that the ALJ erred in rejecting the opinion of his treating physician, Michael T. Pilcher, M.D.  On October 29, 2009. Dr. Pilcher, an internal medicine specialist, completed a medical source statement giving an opinion about Mr. Hutsell's ability to perform work-related activities.  *Id*. at 538-41.  Dr. Pilcher found that Mr. Hutsell was limited in pushing and pulling with his upper extremities and was also limited to occasionally lifting or carrying less than ten pounds; standing or walking less than two hours in an eight-hour day; sitting a maximum of 20-30 minutes for a total of less than six hours in an eight-hour day; and could never climb, balance, kneel, crouch, crawl, or stoop.  *Id*. at 538-39.  Dr. Pilcher stated that he based his findings on decreased range of motion of the neck and an "abnormal x-ray."  He noted that any movement by Mr. Hutsell of his extremities or neck, "makes pain unbearable."  *Id*. at 540.

An ALJ is obliged to give controlling weight to a treating physician's medical opinion that is supported by the record.  See *Ellis v. Barnhart*, 392 F.3d 988, 994-95 (8th Cir. 2005) (citing *Randolph v. Barnhart*, 386 F.3d 835, 839 (8th Cir. 2004); 20 C.F.R. § 404.1527(d)(2)).  A medical source opinion that an applicant is "disabled" or "unable to work," however, involves an issue reserved for the Commissioner and, therefore, is not the type of "medical opinion" to which the Commissioner gives controlling weight.  *Id*. (citations omitted).

4

Further, while medical source opinions are considered by ALJs when assessing

RFC, the final determination of RFC is left to the Commissioner.  See 20 C.F.R.

§ 404.1527(e)(2).  Here, there was substantial evidence supporting the ALJ's decision not

to give Dr. Pilcher's opinion controlling weight.

First, as the ALJ noted, the opinion was not supported by the medical record.

Inconsistency between the medical evidence and Dr. Pilcher's opinion was good reason

for discounting the opinion.[2]  SSA record at 20-23.

Dr. Pilcher examined Mr. Hutsell on May 14, 2009, and found that he had normal

gait, normal upper extremities, and normal neck flexion with decreased extension and

lateral movement.  *Id*. at 423-24.  An x-ray revealed narrowing with sclerosis and

spurring at C5-6 and slight narrowing and spurring at C6-7.  *Id*. at 421.

Leroy Booe, M.D. examined Mr. Hutsell on June 15, 2009.  He noted that Mr.

Hutsell's cervical spine had normal alignment; there was moderate spasm and tenderness

to palpation of the cervical spine; his gait was normal; motor strength was 5/5 in upper

and lower extremities bilaterally.  *Id*. at 408-09.  Mr. Hutsell told Dr. Booe that during

---

[2] The regulations provide that the ALJ considers all of the following factors in deciding the weight to give to any medical opinion: (1) examining relationship, (2) treating relationship; (3) supportability of the opinion; (4) consistency; (5) specialization; and (6) "any factors [the applicant] or others bring[s] to [the ALJ's] attention." 20 C.F.R. § 404.1527(d).  If the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the applicant's] record, [the ALJ] will give it controlling weight." *Id*. at § 404.1527(d)(2); *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007).

flare-ups at work, he could take over-the counter analgesics to ease the symptoms.  *Id*. at

408.  Dr. Booe assessed degenerative disc and joint disease of the cervical spine and

attributed this to aging and occupational stresses.  *Id*. at 410.  He found that Mr. Hutsell

had not been incapacitated in the past twelve months due to his condition.  *Id*. at 408.

Dr. Pilcher examined Mr. Hutsell again on June 26, 2009, and noted he had a

normal gait and normal bilateral shoulder range of motion with neck pain.  *Id*. at 402.  He

also stated that the x-ray findings are "more consistent with degenerative changes and

occur over the long term."  *Id*. at 401.  Prior to June 30, 2010, Dr. Pilcher had not

prescribed pain medication for Mr. Hutsell.  *Id*. 401-02, 442-444.  Dr. Pilcher's treatment

records do not support his opinion that Mr. Hutsell could not work.

Further, the medical records as a whole, do not support the limitations assessed by

Dr. Pilcher.  On September 16, 2009, Coburn Howell, M.D., examined Mr. Hutsell.  Mr.

Hutsell had good strength in all his extremities.  His gait was good; there was no spasm;

and his range of motion in his neck was normal.  *Id*. at 527.  Mr. Hutsell reported

sleeping well and taking aspirin and Tylenol to control headaches.  *Id*. at 526.

Radiologist Muhammad Yousaf, M.D., interpreted an MRI of Mr. Hutsell's

cervical spine on December 18, 2009.  He noted no acute fracture or subluxation.  *Id*. at

573.  There was mild to moderate canal stenosis at C4/C5, posterior disc bulge

osteophyte complex causing effacement of ventral thecal sac and flattening of cord and

mild to moderate canal stenosis at C5/C6, and mild spondylosis in the midthoracic spine at T7 and T8.  *Id*. at 572-73.

On July 22, 2010, Johnny K. Smelz, M.D. administered a nerve conduction study of Mr. Hutsell with normal results.  *Id*. at 551.

During an April, 2011 visit to Byron Curtner, M.D., Mr. Hutsell reported that he had not been to physical therapy since October of 2010.  *Id*. at 778.  Mr. Hutsell reported taking pain relievers hydrocodone and gabapentin.  *Id*.  Dr. Curtner again referred Mr. Hutsell to physical therapy, but there is no indication he ever went.[3]  *Id*.

On June 6, 2011, Matthew Goodwin, M.D., a Physical Medicine Rehabilitation Physician, examined Mr. Hutsell.  He reviewed the 2009 MRI.  On examination, Mr. Hutsell had increased pain with cervical range of motion and decreased range of motion.  *Id*. at 644.  His strength was 5/5 through his upper and lower extremities, and he had full shoulder range of motion without pain.  *Id*. at 644-45.  Dr. Goodwin ordered a new MRI and physical therapy, but Mr. Hutsell told him that it would be difficult for him to regularly attend physical therapy because he did not have reliable transportation.

After an MRI of Mr. Hutsell performed in June, 2011, Dr. Yousaf noted significant increase in spondylosis at C4/C5 and C5/C6 causing flattening of cervical cord and canal stenosis. But he also stated "no obvious abnormal signal is noted."  *Id*. at

---

[3]Mr. Hutsell testified that he had been to the pain clinic twice, once after his first hearing, and the second time in June, 2011.  *Id*. at 42-43.  He also stated he had been to approximately six visits to the physical therapist.  *Id*. at 43, 49.

568.  After reviewing the results of the MRI, Dr. Goodwin referred Mr. Hutsell to a
neurosurgeon for a consult.

Neurosurgeon Susan Tate, M.D., examined Mr. Hutsell on August 29, 2011.  She
noted that Mr. Hutsell could heel/toe walk, had good strength, but a decreased range of
motion in his neck.  *Id*. at 637.  She reviewed his MRI findings, diagnosed cervical
spondylosis and recommended conservative care.  *Id*. at 638.  Dr. Tate reviewed her
findings with Shaukat Hayat, M.D., who agreed with her assessment and
recommendation for conservative treatment.  *Id*.

Mr. Hutsell was examined by Sherri Diamond, M.D., a primary care physician on
October 12, 2011.  Mr. Hutsell reported that he was taking over-the-counter medication
for his neck pain and had stopped taking gabapentin and hydrocodone.  *Id*. at 634.  He
rated his pain as 0 on a 0 to 10 scale.  *Id*. at 635.  He stated that he had another
appointment with the neurosurgeon, but did not understand why because, at his last
appointment, they had said there was no surgery required at that time.  *Id*. at 632.  He
reported that he was managing his pain with over-the-counter analgesics, had not tried
tramadol, and his pain level was "OK most of the time" but he did want something to
use, as needed, when it was not.  *Id*. at 632.  She prescribed tramadol.  *Id*. at 633.

On February 3, 2012, Mr. Hutsell returned for a follow-up neurosurgery consult
with Dr. Tate.  *Id*. at 948-49.  She reviewed the MRI results and wrote that she agreed
with Mr. Hutsell's "desire to apply for social security."  *Id*. at 948.  She again assessed

8

cervical spondylosis and advised him to contact his primary care physician about narcotic pain medication.  *Id*. at 948-49.

Dr. Hayat reviewed the case and noted that the results of the MRI in 2009 and 2011 were "unchanged."  *Id*. at 946.  He diagnosed cervical spondylosis at C4-5 "which has not gotten any worse."  *Id*.  He noted that Mr. Hutsell's nerulogical examination was normal and stated he did not think any surgical intervention was going to cure his problem.  *Id*.  Dr. Hayat advised Mr. Hutsell to continue pain management and to return on an as-needed basis.  *Id*.

The ALJ considered and explained the weight given to all of Mr. Hutsell's treating physicians' opinions.  *Id*. at 22-24.  The ALJ also considered the opinions of the state agency physicians.  *Id*. at 24-25.  State agency physicians' opinions are expert opinions, and an ALJ must consider these opinions, along with the other evidence of record.  See 20 C.F.R. § 416.927(f); SSR 96–6p.

In contrast to Dr. Pilcher's opinion, Sharon Keith, M.D., reviewed Mr. Hutsell's medical records on May 17, 2011, and concluded that Mr. Hutsell had the residual functional capacity to perform a full range of medium work.  *Id*. at 861.  Patricia McCarron, M.D., reviewed the file on August 9, 2011, including the results of the June 8, 2011 MRI, and agreed with Dr. Keith's assessment.  *Id*. at 941.

The ALJ properly considered the opinions of the state agency physicians and did not err by giving more weight to these opinions, which were based on a review of the

medical evidence, than the opinion of Dr. Pilcher, which was unsupported by the medical evidence. See *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (an ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence).

The medical records as a whole do not support Dr. Pilcher's opinion that Mr. Hutsell could not work.

**Activities of Daily Living**

Mr. Hutsell complains that there is not substantial evidence to support the ALJ's conclusion that his daily activities did not correspond with those of an individual who was unable to work. Here, the ALJ assessed Mr. Hutsell's activities of daily living as part of his broader evaluation of Mr. Hutsell's credibility. (#11 at pp. 30-33) An ALJ has a duty "to assess the credibility of the claimant and other witnesses." *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (citation omitted).

To evaluate Mr. Hutsell's credibility, the ALJ followed the required two-step process and considered the required factors, including Mr. Hutsell's activities of daily

living.[4]  SSA record at pp. 18-20, 24-25; see *Policy Interpretation Ruling Titles II & XVI:*

*Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's*

*Statements*, SSR 96-7p (July 2, 1996).  Thus, the question before the court is whether

substantial evidence supports the ALJ's evaluation of Mr. Hutsell's credibility.

The ALJ may discount a claimant's complaints of pain if they are inconsistent with

the evidence as a whole.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001);

*Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996) ("An ALJ may discount a

claimant's subjective complaints of pain only if there are inconsistencies in the record as

a whole.").  Here, the ALJ determined that the medical findings were inconsistent with

disabling pain.  SSA record at 18-25.  As set forth in more detail above, substantial

evidence supports that determination.

Mr. Hutsell complains that the ALJ "impermissibly 'cherry-picked' only portions

of testimony and function forms on daily activities."  (#11 at p. 13)  The record does not

support Mr. Hutsell's argument.  Here, the ALJ not only discussed Mr. Hutsell's function

report of April 12, 2011, where he stated he mowed the yard, took out trash; shopped in

stores for groceries and household items; paid bills; watched television; spent time with

---

[4]In considering the credibility of a claimant's subjective complaints, an ALJ must consider: (1) the claimant's prior work record; (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

others; talked daily with family; and helped his wife shop and carry the groceries, but also discussed Mr. Hutsell's testimony that he needed to alternate standing and sitting; could drive, but not for long distances; and that his back, neck, and shoulder pain limited his daily activities.  SSA record at 18-19.

Further, in assessing Mr. Hutsell's credibility, the ALJ did not solely consider activities of daily living, but also the objective medical evidence, work history, medications, and side-effects of medications.  *Id*. at 18-25.  He noted that Mr. Hutsell's earning records reflected fairly consistent earnings in the years preceding his alleged onset date, but also noted that he had stopped working because he was laid off, not due to his impairments.  *Id*. at 22, 24.  He pointed out that Mr. Hutsell had declined steroid shots, frequently reported controlling his pain with over-the-counter medications, was not prescribed prescription pain medication until June, 2010, and was never referred to an orthopedic specialist.  *Id*. at 19, 21-22, 24.  These are all factors an ALJ may consider when making a credibility determination.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

**Conclusion**

Substantial evidence supports the ALJ's decision denying Mr. Hutsell's application.  The ALJ made no legal error.  For these reasons, Ms. Hutsell's request for relief (#2) is DENIED, and the decision denying the application for benefits is AFFIRMED.

DATED this 2nd day of October, 2014.

_____
UNITED STATES MAGISTRATE JUDGE